UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES MCDANIEL, | Case No.: 3:19-cv-00101-RCJ-CSD |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF No. 66 |
| JAMES DZURENDA, et al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Tasheena Cooke's[1] motion for summary judgment. (ECF Nos. 66, 66-1 to 66-10, 68-1, 68-2, errata at ECF Nos. 71-1 to 71-3.) Plaintiff filed a response. (ECF No. 83.)

After a thorough review, it is recommended that Cooke's motion be granted.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC). He initially filed a civil rights action pursuant to 42 U.S.C. § 1983 while proceeding pro se. He was subsequently appointed pro bono counsel, David M. Zaniel, Esq. (ECF No. 22.) The court screened his counseled second amended complaint (SAC), and allowed Plaintiff to proceed with a single Eighth Amendment failure to protect claim against Cooke. (ECF No. 46.)

---

[1] Formerly known as Tasheena Sandoval.

1    Plaintiff alleges that when he began his incarceration with NDOC, he signed on to be in
2 protective custody due to enemies he had within the prison system. He was also blind in one eye.
3 He claims that he spent 13 years at Ely State Prison (ESP) without incident. Then, in 2017, he
4 was transferred to Northern Nevada Correctional Center (NNCC). Plaintiff avers that Cooke,
5 aware of his classification, transferred Plaintiff to NNCC without protective custody status.
6 While at NNCC, he was placed in the psychological ward where inmates were grouped together
7 for sessions and served dinner on the tier with other inmates. Plaintiff believed he was still in
8 protective custody. On June 17, 2017, during dinner, inmate Cordell Bell attacked Plaintiff,
9 causing him to lose sight in his other eye. (ECF No. 43.)
10   On March 5, 2021, Mr. Zaniel filed a motion to withdraw as counsel because Plaintiff
11 had terminated the attorney-client relationship. (ECF Nos. 52, 52-1, 52-2.) The court granted that
12 motion. (ECF No. 53.)
13   On October 8, 2021, Cooke filed her motion for summary judgment. She argues that she
14 did not violate the Eighth Amendment because she did not know of any threat to Plaintiff;
15 Plaintiff did not exhaust administrative remedies; and alternatively, she is entitled to qualified
16 immunity. (ECF No. 66.)
17   Plaintiff did not file a timely response. On November 17, 2021, the court *sua sponte* gave
18 Plaintiff an additional 30 days, until December 17, 2021, to file a response. (ECF No. 73.)
19 Plaintiff did not do so.
20   On January 7, 2022, Plaintiff filed a motion notifying the court that caseworker Villatoro
21 at High Desert State Prison (HDSP) told Plaintiff on October 28, 2021, that she and the warden
22 had his legal mail and would not give it to him. (ECF No. 74.) On January 12, 2022, the court
23 issued an order pointing out that it was peculiar that Villatoro told Plaintiff they had his legal

mail in October 2021, but Plaintiff waited until January 7, 2022, to file anything with the court. The court also advised Plaintiff that a motion for summary judgment would not be considered "legal mail" as it is a publicly filed document. Instead, the motion was electronically filed and should have been delivered to Plaintiff by the law librarian. Nevertheless, the court ordered Cooke to immediately re-serve Plaintiff the with motion for summary judgment, and gave Plaintiff an additional 21 days, until February 2, 2022, to file his response. (ECF No. 75.) Cooke filed a notice of compliance and proof of service by hand delivery. (ECF Nos. 76, 77.)

On January 26, 2022, Plaintiff filed a motion to belatedly add a signature to his existing opposition to the motion for summary judgment because the court informed him that he forgot to sign the opposition. (ECF No. 79.) In fact, Plaintiff had not filed a response to the motion for summary judgment, and the court had not said anything about him not signing a response. As such, the court denied his motion to add a belated signature. The court reminded Plaintiff that he had until February 2, 2022, to file his response to the motion. (ECF No. 80.)

On February 7, 2022, Plaintiff had not filed a response, and the court treated the motion for summary judgment as unopposed and issued a report and recommendation to grant Cooke's motion for summary judgment. (ECF No. 82.)

On February 8, 2022, a response was docketed. (ECF No. 83.)

The court issued an order withdrawing the prior report and recommendation (ECF No. 84), and issues the instant report and recommendation after considering Plaintiff's response.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

*v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison

conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

"[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citations and quotation marks omitted); *see also Cortez v. Skol,* 776 F.3d 1046, 1050 (9th Cir.2015) (citing *Farmer*, 511 U.S. at 833). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,'… having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations and quotation marks omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes*, 452 U.S. at 347).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834; *see also Labatad v. Corrections Corp. of America*, 714F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)). Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See Farmer*, 511 U.S. at 834; *Labatad*, 714F.3d at 1160.

First, the plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer,* 511 U.S. at 834. (citations omitted).

Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "A prison official's deliberate indifference may be established through an 'inference from circumstantial evidence' or 'from the very fact that the risk was obvious.'" *Cortez*, 776 F.3d at 1050 (citing *Farmer*, 511 U.S. at 842); *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015).

Thus, prison officials may avoid liability by: (1) proving they were unaware of the risk, or (2) proving they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844-45.

Cooke presents the following evidence in support of her motion: Plaintiff has been incarcerated within NDOC since late 2003. (ECF No. 66-1 at 5; ECF No. 66-2 at 2.) He was housed at ESP from 2006 to 2017. (ECF No. 66-1 at 4; ECF No. 66-2 at 3-5.) In February of 2017, he was transferred to NNCC. (ECF No. 66-2 at 5; ECF No. 68-1 at 2.)

On June 17, 2017, Plaintiff was involved in an altercation with inmate Cordell Bell that resulted in Plaintiff receiving a laceration to the right eye lid and not being able to see out of the right eye. (ECF No. 68-2; ECF No. 66-3.)

Cooke has been employed by NDOC since 2006, and throughout this time she has been employed at ESP. (Cooke Decl., ECF No. 66-4 ¶¶ 3-4.)

Plaintiff was transferred from ESP to NNCC as a part of a general transfer of inmates with mental health issues for the purpose of receiving mental health treatment, at the recommendation of ESP's mental health department. (Powers Decl., ECF No. 66-10 ¶ 5.) Cooke did not have any input into the decision to transfer Plaintiff to NNCC. (Cooke Decl., ECF No. 66-4 ¶ 8; Powers Decl., ECF No. 66-10 ¶ 6.) In addition, at the time Plaintiff was transferred to

NNCC, ESP did not officially house protective custody inmates or confer protective custody status on inmates. (Cooke Decl., ECF No. 66-4 ¶ 9.)

The attack on Plaintiff occurred at NNCC, and Cooke had no responsibilities for Plaintiff after his transfer from ESP to NNCC. (*Id.* ¶ 6.) In addition, inmate Bell was not named an enemy of Plaintiff's until January 9, 2019, after the June 2017 attack. (Powers Decl., ECF No. 66-10 ¶ 10.) Cooke maintains there is no evidence that she knew about any danger posed to Plaintiff at NNCC.

Cooke has presented evidence demonstrating she did not know of, nor disregard, any risk to Plaintiff's safety. She had no involvement in Plaintiff's transfer to ESP, and did not work at NNCC, where Plaintiff was assaulted. Nor was inmate Bell listed as one of Plaintiff's enemies while Plaintiff was housed at ESP.

In his response, Plaintiff states that he was a maximum custody solitary confinement inmate and without signing himself out of that custody, Cooke, as his caseworker, moved him to NNCC, where he was placed in general population. He was subsequently assaulted.

Plaintiff cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, Plaintiff must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent *evidence* that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324. Plaintiff repeats his allegation that Cooke moved him to NNCC without providing any *evidence* to contradict the evidence submitted by Cooke that she had no involvement in the decision to transfer him from ESP to NNCC.

In the absence of a genuine dispute of material fact, summary judgment should be granted in Cooke's favor.[2]

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Cooke's motion for summary judgment (ECF No. 66).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: February 8, 2022

_____
Craig S. Denney
United States Magistrate Judge

---

[2] In light of this conclusion, the court need not reach Cooke's remaining arguments.